So Ordered.

Dated: May 9, 2025



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

      Ger V. Xiong and Jia Xiong,           Case No. 24-25435-gmh
                                              Chapter 7

      Debtors.

## OPINION AND ORDER

      Debtors Ger and Jia Xiong filed a chapter 7 bankruptcy petition and, pursuant to 11 U.S.C. §522(b)(3), they claimed an exemption in real property located at 353 Oak Street, Oakfield, Wisconsin, under Wisconsin's homestead exemption, Wis. Stat. §815.20. ECF No. 1, at 18. Judgment creditors Long Lee, Miana Lee, Unlimited Wealth, LLC, David Blong, and Mee Lee (the Lee Parties) object to that exemption. ECF No. 19. The Lee Parties contend that the property was acquired with converted funds, and, as a result, the debtors cannot avail themselves of the homestead exemption because state law makes the homestead exemption inapplicable under these circumstances. ECF No. 19-1. And they assert that this court should disallow the exemption as a matter of law because the issue has already been determined in state-court proceedings.

To understand the Lee Parties' contention that the debtors cannot utilize the Wisconsin homestead exemption, one must begin with the parties' state-court litigation. The Lee Parties first obtained a judgment for more than $2.3 million against non-debtor Kay Yang in a circuit court case to which the debtors were not parties. To enforce that judgment the Lee Parties then sued Yang, the debtors and ten others in the Ozaukee County circuit court, requesting "judgment under Wisconsin Statutes 242.04 and 242.07" (Wisconsin's Uniform Fraudulent Transfer Act, Wis. Stat. ch. 242) to avoid allegedly fraudulent transfers made by Yang to the other defendants, including the debtors.[1] ECF No. 19-3; ECF No. 30-1, at 12. In the Ozaukee County fraudulent transfer action against the debtors, the Lee Parties alleged that to hinder their collection efforts, Yang made voidable transfers that "related to" the other defendants' purchases of property, including the debtors' real property located at 353 Oak Street, Oakfield, Wisconsin. ECF No. 30-1, at 10–11. The Ozaukee County circuit court entered a money judgment by default for about $2.4 million against the defendants, jointly and severally, and adjudged that several properties, including the debtors' Oak Street property, were "attached by lien in favor of the plaintiffs in the total amount of the judgment." ECF No. 19-5, at 3–4.

The Lee Parties then docketed that judgment in Fond du Lac County, the Oak Street property's situs, and initiated a second action against the debtors in that county's circuit court to execute the judgment on the property. ECF No. 19-2, at ¶6. In response, the debtors contended that the property is their homestead, thus exempt from the execution of any judgment lien up to $150 thousand, as provided in Wis. Stats. §§815.20

---

1. Wisconsin's Uniform Fraudulent Transfer Act was amended on March 29, 2024, when 2023 Wisconsin Act 246 took effect. Among other changes, the Act renamed chapter 242 the "Uniform Voidable Transactions Law." 2023 Wisconsin Act 246, §§1–32 (eff. Mar. 29, 2024).

& 990.01(13) & (14).[2] ECF No. 19-8. The Lee Parties asked the Fond du Lac County circuit court to deny the debtors' exemption under Wis. Stat. §815.18(10) and the holding in *Est. of Paulman v. Pemberton*, 633 N.W.2d 715 (Wis. Ct. App. 2001), as inapplicable to property obtained through a fraudulent transfer.[3] See ECF No. 19-7. They contended that denial of the exemption followed as a matter of course from the Ozaukee County circuit court's default judgment based on alleged fraudulent transfers. The debtors countered that the default judgment did not preclude them from maintaining for purposes of the homestead exemption that they had *not* "procured, concealed or transferred assets with the intention of defrauding creditors" and that, at a minimum, the Fond du Lac County circuit court had to determine the extent to which they acquired their residence with fraudulently transferred property, limiting the exemption's application accordingly. Wis. Stat. §815.18(10); see also ECF No. 19-10, at 14–21; 24–27.

After considering oral argument at an October 11, 2024 hearing, the Fond du Lac County circuit court announced a ruling on the Lee Parties' request that it deny the debtors' homestead exemption. ECF No. 19-10. The court first ruled from the bench that the property was not exempt, stating:

> The Court believes that the - - that the decisions and the orders of [Ozaukee County circuit court] Judge Williams in 22-CV-162 especially applies to the defendants in this case. It applies to the property in this case. And having - - having been given opportunity to reconsider those rulings and having the - - the opportunity and the time to appeal those decisions,

---

2. In their bankruptcy schedules, the debtors value the property at $245 thousand subject to a mortgage that secures a claim held by Bank First for about $155 thousand. ECF No. 1, at 22.

3. See Wis. Stat. §§815.18(10) ("Any or all of the exemptions granted by this section may be denied if, in the discretion of the court having jurisdiction, the debtor procured, concealed or transferred assets with the intention of defrauding creditors.") & 815.18(13)(d) (making sub. (10) applicable to a homestead exemption under Wis. Stat. §815.20); see also *Est. of Paulman*, 633 N.W.2d 715 (holding that Wis. Stat. §815.20 does not apply to the extent a homestead is acquired with converted funds).

those - - those opinions are still in effect today. And so what this is, is the plaintiffs now attempting to execute on these judgments.

And the Court will rely on those - - the decisions of the Court in Ozaukee County. I do find that - - that the Court will deny the request for the exemption and that these - - this property is not exempt from execution.

I believe that the - - the Court in Ozaukee County was in the best place to decide this. I think their orders are in place. I think they stand, and the - - and merely all the plaintiffs are asking to do is execute against using those judgments, and so I'll rely on those judgments and deny the exemption.

*Id.* at 26–27. At the same hearing, debtors' counsel, Mr. Small, requested clarification of whether the exemption remained applicable to the extent the debtors' ownership interest did not result from the alleged fraudulent transfers. *Id.* at 27. Following a further colloquy with the debtors' counsel, the Lee Parties' counsel and counsel for the bank that holds a mortgage on the property about subsequent procedural steps, including valuing the property, listing it for sale, confirming any sale, resolving any dispute over subordination of the bank's lien, and distributing the sales proceeds, the court qualified its earlier pronouncement on the exemption, stating, "All right. As far as your request, Mr. Small, I'm not going to make a determination now. I mean, we'll make the determination. If you want to bring it up – raise the issue again in the future, you may." *Id.* at 27–31.

The Fond du Lac County circuit court never entered an order giving effect to its October 11 oral rulings. Later that day the debtors filed a bankruptcy petition initiating this case, thus staying further state-court proceedings against the debtors and their property by operation of 11 U.S.C. §362(a). The debtors' schedule C claims their Oak Street property is exempt under Wisconsin's homestead exemption, Wis. Stat. §815.20. ECF No. 1, at 18.

II

A

The Lee Parties first contend that, as a matter of claim or issue preclusion, the Fond du Lac County circuit court's October 11, 2024 oral ruling bars the debtors from exempting the Oak Street property under Wis. Stat. §815.20 in this bankruptcy case. ECF No. 19-1, at 3–4 (citing *Kruckenberg v. Harvey*, 694 N.W.2d 879 (Wis. 2005), and *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000)).

As this court observed in its December 13, 2024 order, claim and issue preclusion apply under Wisconsin law only when there is a final order, which the Fond du Lac County circuit court's order is <u>not</u>:

> Wisconsin precedent directs . . . that the application of both claim preclusion and issue preclusion require entry of a final order. See *Kruckenberg v. Harvey*, 694 N.W.2d 879, 884-85 (Wis. 2005)[,] and *Jensen v. Milwaukee Mut. Ins. Co.*, 554 N.W.2d 232, 234 (Wis. App. 1996). And an order is not final for purposes of appeal unless it is in writing and filed with the clerk. See Wis. Stat. §808.03(1)(a) (to be appealable, a final order must be "entered in accordance with . . . [Wis. Stat. §] 807.11(2)", which in turn provides that "[a]n order is entered when it is filed with the office of the clerk of court.").

ECF No. 25, at 2. The Fond du Lac County circuit court's ruling would not have ended the proceedings as between the parties, the Wisconsin-law touchstone for an order being final and appealable. See *Harder v. Pfitzinger*, 682 N.W.2d 398, 402 (Wis. 2004). As the transcript of the proceedings makes clear, the court's ruling only partially resolved an interlocutory request for relief: The court ruled that the debtors could not apply the homestead exemption to the extent they acquired their residence with funds wrongfully received from Yang, the Lee Parties' fraudster nemesis. The court expressly left for another day whether and to what extent the debtors could apply the homestead exemption to the extent the debtors contributed to the property's value beyond the use of any funds they received wrongfully. What is more, the court plainly did not

contemplate that the ruling resolved the proceeding. At the hearing each of the parties' counsel made clear to the court that there was more to do: (i) valuation of the property; (ii) sale of the property; (iii) consideration of, and potential discovery into, whether there was a basis to subordinate the bank's mortgage; (iv) confirmation of any sale; (v) distribution of sale proceeds; and, if raised again by the debtors, (vi) a determination of whether they could apply the homestead exemption to the extent the property's value exceeded any amount received wrongfully from Yang. The circuit court's October 11 ruling did not "'dispose[] of the entire matter in litigation as to one or more of the parties'". *Wambolt v. W. Bend Mut. Ins. Co.*, 728 N.W.2d 670, 678 (Wis. 2007) (emphasis omitted) (quoting Wis. Stat. §808.03(1)). Consequently, even if the Fond du Lac County circuit court had reduced its ruling to a written order, that order would not have been final for claim and issue preclusion purposes.

This court's December 13 preliminary order observed that the Fond du Lac County circuit court's ruling appeared to be nonfinal, thus without preclusive effect, and afforded the Lee Parties an opportunity to contest that tentative conclusion. The Lee Parties did not do so, electing instead to argue other grounds to support their contention that the debtors are barred from claiming a Wisconsin homestead exemption.

### B

The Lee Parties make two new arguments. They first argue that the doctrine of estoppel by record prevents the debtors from relitigating the Fond du Lac County circuit court's ruling that the debtors could not utilize Wis. Stat. §815.20's homestead exemption. ECF No. 29, at 5–6 (citing and quoting *Lindas v. Cady*, 515 N.W.2d 458, 463 (Wis. 1994), and *Brooks v. Bank of Wis. Dells*, 467 N.W.2d 187 (Wis. Ct. App. 1991)). They alternatively argue that the Ozaukee County circuit court's default judgment, as a

matter of either claim or issue preclusion, bars the debtors from claiming a homestead exemption. ECF No. 29, at 6–8.

1

The Lee Parties suggest that estoppel by record can preclude subsequent adjudication of an issue even in the absence of a final order, relying on *Lindas v. Cady*'s description of what it calls "the claim preclusion-related doctrine of estoppel by record". 515 N.W.2d at 463. They read the following passage from *Lindas* to mean that, if there is an identity of parties and claims, the doctrine of estoppel by record can give preclusive effect to non-final rulings made during ongoing litigation:

> Under claim preclusion, or res judicata, "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings." *DePratt v. West Bend Mutual Insurance Co.*, 113 Wis.2d 306, 310, 334 N.W.2d 883 (1983). **"Estoppel by record," the doctrine relied upon by the circuit court and court of appeals in this case, is identical to claim preclusion except that it is the record of the earlier proceeding, rather than the judgment itself, which bars the subsequent proceeding.** *Brooks v. Bank Of Wisconsin Dells*, 161 Wis.2d 39, 46, 467 N.W.2d 187 (Ct.App.1991). In order for claim preclusion or estoppel by record to apply, there must be an identity of parties or their privies and an identity of claims in the two cases. *DePratt*, 113 Wis.2d at 311, 334 N.W.2d 883.

*Id.* (emphasis added).

The preclusive effect of state court proceedings is a question of Wisconsin law to be resolved by determining (or predicting as best one can) how the Wisconsin supreme court would answer it. *Daniels v. United Healthcare Servs., Inc.*, 74 F.4th 803, 806 (7th Cir. 2023); see also 28 U.S.C. §1738 ("The records and judicial proceedings of any court of any [ ] State [of the United States] . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."). No Wisconsin precedent cited by the parties or of which the court is aware definitively

answers whether estoppel by record gives preclusive effect to an interlocutory ruling made in an ongoing civil action.

This court proposed at a February 4, 2025 hearing that Wisconsin law should be understood to limit the application of estoppel by record to prior proceedings that are finally adjudicated. ECF No. 34. The court suggested that *Great Lakes Trucking Co. v. Black* (among other cases) supports that understanding by equating the principles of estoppel by record and res judicata (claim preclusion). 477 N.W. 2d 65, 67–69 (Wis. Ct. App. 1991). *Great Lakes* rejected a contention that neither res judicata nor estoppel by record applied when earlier litigation was resolved by stipulation, and it can be read to treat similarly res judicata's judgment requirement and estoppel by record's adjudication requirement:

> Initially, Great Lakes argues that res judicata and estoppel by the record do not apply because there was not a prior adjudication. We disagree. **An adjudication is the giving of a judgment.** *See* BLACK'S LAW DICTIONARY 42 (6th ed. 1990). **A judgment is a final determination of the rights of the parties**. . . . The stipulation between Great Lakes and B & C was approved by the court and was a final determination of their rights under that action. Not only can a judgment on the merits be entered without a trial, . . . but **a stipulation may act as a final judgment. . . Thus, there was an adjudication and a final judgment in the first proceeding**.
>
> \* \* \* \*
>
> The trial court dismissed Great Lakes' action against Black based on estoppel by the record. Estoppel by the record focuses on the former record, rather than the judgment itself, to bar the second proceeding. . . . The rule prevents a party from relitigating what was actually litigated—*or which might have been litigated*—in a former proceeding. [ ] Under either res judicata or estoppel by the record, there must be an identity of parties and an identity of causes of action. [ ] **Because of the analytical similarity, the cases which address res judicata equally apply to estoppel by the record**.

477 N.W.2d at 67–68 (bold added) (internal citations omitted); see also *Bankr. Est. of Lake Geneva Sugar Shack, Inc. v. Gen. Star Indem. Co.*, No. 91-C-0163, 2000 WL 1048789, at *3

(E.D. Wis. July 26, 2000) (Under Wisconsin law, "[e]stoppel by record is identical to claim preclusion except that it is the record of the earlier proceeding, rather than the judgment itself, that bars the subsequent proceeding.").[4]

Wisconsin courts have consistently equated the doctrines of res judicata and estoppel by record, thus, at a minimum, implying that estoppel by record, like res judicata (claim preclusion), precludes subsequent litigation only after final adjudication. See, e.g., *Brooks*, 467 N.W.2d at 190 ("Estoppel by record differs from *res judicata* in that it is the record of the earlier proceedings, rather than the judgment itself, that bars the second proceeding."); *Acharya v. AFSCME, Council 24, WSEU, AFL-CIO, Loc. No. 1*, 432 N.W.2d 140, 142 (Wis. Ct. App. 1988) ("'Estoppel by record' . . . prevents a party from relitigating what was actually litigated—or which might have been litigated—in a former proceeding. . . . It is closely related to res judicata, except that it is the former record, rather than the judgment itself, that bars the second proceeding." (citing *Leimert v. McCann*, 255 N.W.2d 526, 528 (Wis. 1977))); *Leimert*, 255 N.W.2d at 528–29 (footnotes omitted) ("The doctrine of estoppel by record prevents a party from litigating again what was actually litigated or might have been litigated in a former action. Closely related is the doctrine of res judicata. This latter doctrine has the effect of making a final adjudication conclusive in a subsequent action between the same parties, or their privies, not only as to all matters which were litigated, but also as to all matters which might have been litigated in the former proceedings."); *Kuchenreuther v. Chi., M., St. P. & P.R. Co.*, 275 N.W. 457, 457–48 (Wis. 1937) ("The doctrine of estoppel by record prevents a party, not only from litigating again what was actually litigated in the former case, but

---

4. One unreported opinion of the Wisconsin court of appeals from 1981 (which Wis. Stat. §809.23(3)(a) deprives of even persuasive value in Wisconsin courts) expressly equates estoppel by record and res judicata: "Res judicata precludes a party from asserting a cause of action after there has been a final judgment on the merits of the same cause of action between the same parties. This is claim preclusion or merger and bar. **It is also known as estoppel by record** and applies to issues that were litigated or might have been litigated." *Robinson v. Oneida Cnty.*, No. 81-441, 1981 WL 139030, *1 (Wis. Ct. App. Nov. 3, 1981) (unreported) (emphasis added) (footnotes omitted).

from litigating what might have been litigated therein."); see also *Mich. Ins. Bank v. Eldred*, 17 F. Cas. 265, 266 (C.C. E.D. Wis. 1875) (No. 9,528) (citations omitted) ("To give to a judgment the effect of an estoppel, it must appear that the matter in question was or might have been directly involved in the former action as a necessary issue, and was passed upon by the court or jury at the former trial. The point or question in controversy must have been determined and adjudicated to make the record of the former proceedings conclusive. Where an action has been dismissed or a judgment given for the defendant upon a preliminary point before reaching the merits, it is no bar to another action.").

In opposing a conclusion that estoppel by record only applies after final adjudication, the Lee Parties argue, "If a final judgment or final adjudication was an element of estoppel by record, then estoppel by record and res judicata would be the same doctrine." ECF No. 37, at 2 (citing *Leimert* 255 N.W.2d at 528). As this opinion will explain, however, while estoppel by record has a distinct origin and once served in part to import broader preclusive effect than did res judicata, subsequent developments in pleading and the scope of res judicata (claim preclusion) have left estoppel by record with no unique domain.

a

"The authority of the *res judicata* . . . is derived by us from the Roman law and the Canonists." *Washington, Alexandria, & Georgetown Steam-Packet Co. v. Sickles*, 65 U.S. 333, 341 (1860). Estoppel by record, on the other hand, originated under Germanic law. Robert Wyness Millar, *The Historical Relation of Estoppel by Record to Res Judicata*, 35 Ill. L. Rev. 41, 45 (1940-1941); see also Alexandra Bursak, *Preclusions*, 91 N.Y.U. L. Rev. 1651, 1660, 1664 (2016) ("[O]ur modern claim and issue preclusion derive from two separate legal traditions—res judicata, from the Roman preclusion law of the same name, and collateral estoppel, from the Anglo-Norman principle that became estoppel by the record. . . . Avant la lettre, a Germanic doctrine very like estoppel by record also bound

parties to the claims they made and the actions they took anterior to judgment." (quotations omitted)).

Before the nineteenth century, British and American courts ruled that the res judicata effect of a prior judgment precluded subsequent efforts to plead identical claims—as narrowly construed under code pleading's requirement that a complaint "[m]atch[] facts to legal elements", *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024)—whereas estoppel by record barred parties from later litigating distinct claims when granting relief would contradict matters established in an earlier proceeding:

> Where the second suit is clearly no more than a repetition, at least in substance, of the former controversy (and on occasion, at least, even though the party-roles are reversed) it is the judgment itself in that first suit that stands as a barrier to the prosecution of the second. But where the second suit is not merely a repetition of the former controversy, yet is so related that to allow a given allegation therein would be to permit a contradiction of some allegation, admission or finding in the first suit, it is not the judgment itself in the first suit but the particular record term which would be thus contradicted that stands as the barrier: this and this only is the case of estoppel by record.

Millar, 35 Ill. L. Rev. at 46. "[E]stoppel by record", moreover, "was a creature of the common law; it had no place outside the common-law courts." *Id*. at 56. After the merger of law and equity and the disappearance of code-pleading rules, estoppel doctrines, like estoppel by record, were absorbed into principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion), eliminating any distinctive role for "estoppel by record":

> Unquestionably, the term "estoppel by record" should be laid aside altogether in the present connection. The whole field of preclusion attendant upon judicial determination should be dealt with under the head of *res judicata*. Under this head indisputably belongs, as a matter of history, every aspect of such preclusion saving only that falling within the ambit of common-law estoppel. The ghost of the latter may still occasionally walk,

evoked by the citation of the old cases, but it would be difficult to maintain that it preserves today its corporeal identity. In substance it has become absorbed by the principle of *res judicata*.

*Id*. at 59; see also *Developments in the Law Res Judicata*, 65 Harv. L. Rev. 818, 821 (1951–1952) ("Despite their interrelationship, the Roman and Germanic doctrines were long kept distinct in judicial and academic discussion, and much confusion in terminology resulted. It was not until pleading differences and the requirement that 'record' proof establish the estoppel were abolished that they came to be recognized as parts of a single procedural doctrine."); *Miller Bldg. Corp. v. NBBJ N. Carolina, Inc.*, 497 S.E.2d 433, 435 (N.C. Ct. App. 1998) ("'Estoppel by record' is an antiquated phrase formerly broadly used to refer to the principles presently encompassed within the phrases res judicata (claim preclusion) and collateral estoppel (issue preclusion)."); *id.* at n.1 ("The continued use of the phrase 'estoppel by record' is discouraged. The party seeking dismissal should specify whether he seeks dismissal on the basis of res judicata or collateral estoppel.").

What is more, estoppel by record has long required final adjudication of the proceeding claimed to be preclusive: "modern courts require that issues must have been essential to a valid and final judgment before assigning them preclusive effect, [even though] this prerequisite did not attach to earlier estoppels". Bursak, 91 N.Y.U. L. Rev. at 1664. "Although the judgment could not be the source of the estoppel, final judgment was required to make the 'estoppel by record' conclusive". *Developments in the Law Res Judicata*, 65 Harv. L. Rev. at 820–21.

b

Similarly, many Wisconsin courts have described estoppel by record as being "[c]losely related" to res judicata, which, as discussed above, is only applicable following a final judgment. *Leimert*, 255 N.W.2d at 528–29. *Lindas*, an opinion of the Wisconsin supreme court, states that estoppel by record "is identical to claim preclusion

except that it is the record of the earlier proceeding, rather than the judgment itself, which bars the subsequent proceeding." 515 N.W.2d at 463. *Lindas*'s description of the estoppel-by-record doctrine implies that the doctrine is applicable only following a final resolution, since, in the absence of that requirement, the doctrine would not be "identical to claim preclusion"—a doctrine that only applies after entry of final judgment.[5] In fact, the Wisconsin supreme court in *Gohr v. Beranek* plainly understood the doctrine to be limited, like res judicata (claim preclusion), to instances in which *there has been a final adjudication*, stating, "'The doctrine of estoppel by record prevents a party, not only from litigating again what was actually litigated in the former case, but from litigating what might have been litigated therein.' . . . 'The final adjudication is conclusive, in a subsequent action between the same parties, as to all matters which were litigated or which might have been litigated in the former proceedings.'" 64 N.W.2d 246, 249 (Wis. 1954) (first quoting *Kuchenreuther,* 275 N.W. at 457–58, then quoting *Werner v. Riemer*, 39 N.W.2d 457, 465 (Wis. 1949)).[6]

---

5. Even decisions addressing estoppel by record in the administrative law context contemplate a final determination on the merits. See *Acharya,* 432 N.W.2d at 142 ("[T]he commission resolved both issues against Acharya, and its decision was upheld in judicial review proceedings in circuit court."); *Lindas v Cady*, 499 N.W.2d 692, 697 (Wis. Ct. App. 1993) ("We could have been more precise in our final sentence of *Acharya*. But the entire opinion considers the preclusive effect of an unreviewed administrative decision. We had no need to consider the preclusive effect of reviewed administrative decisions, for that issue was not before us."); Colleen D. Ball, *Bound and Determined: The Preclusive Effect of Agency Decisions*, 69 Wis. Law. 20, 21, 61 (Aug. 1996) ("The doctrine of estoppel by record is closely related to the concept of claim preclusion. . . . When a party to an administrative proceeding receives the same procedural protections afforded a courtroom trial, preclusion principles provide a useful means of limiting vexatious lawsuits, conserving judicial resources and preventing inconsistent decisions.").

6. The Wisconsin court of appeals has at times equated estoppel by record with collateral estoppel (issue preclusion). See, e.g., *Portage Cnty. Bank v. Deist*, 464 N.W.2d 856, 859 (Wis. Ct. App. 1990) (citations omitted) ("They use the term 'estoppel by record,' a usage consistent with some older cases, . . . This rule, known as 'issue preclusion,' subsumes the concepts of direct and collateral estoppel, . . . and is included in the concept 'res judicata.'"); *Meyer v. Dept. of Transp.*, 528 N.W.2d 91, 1994 WL 679080, *2 n.1 (Wis. Ct. App. 1994) (unpublished) ("Collateral estoppel, also known as estoppel by the record or issue preclusion, is intended to limit the relitigation of issues that have already been litigated in a

Wisconsin law is thus best understood to require a previous final adjudication as a condition to applying estoppel by record. Therefore, the Fond du Lac County circuit court's non-final ruling on the debtors' homestead exemption does not bar, as a matter of estoppel by record, the debtors' claim to a homestead exemption under Wisconsin law in this bankruptcy case.

2

The Lee Parties alternatively argue that the Ozaukee County circuit court's judgment precludes—either as a matter of claim or issue preclusion—the debtors from claiming a homestead exemption under Wisconsin law because that judgment "actually litigated whether a fraudulent transfer had occurred specific to the Xiongs' claimed homestead" and the Lee Parties prevailed on that issue. ECF No. 29, at 6 (emphasis omitted). They further contend, "Based on the [Ozaukee County] final judgment, the Debtors are precluded from arguing whether their homestead (the Property) was

_____

previous action."); *State ex rel. Bennett v. Sobczak*, 308 N.W.2d 419, 1981 WL 138702, \*3 n.5 (Wis. Ct. App. 1981) (unpublished) (citations omitted) ("The doctrine of collateral estoppel, or estoppel by record, operates to prevent relitigation of an issue that actually was litigated in a former action. . . . This doctrine, also called issue preclusion, is appropriately invoked where the party against whom it is asserted had the opportunity to fully and fairly litigate the issue in a prior action."); *Schaefer v. Schaefer*, 277 N.W.2d 332, 1979 WL 30708, \*2 (Wis. Ct. App. 1979) (unpublished) ("Instead, the similar doctrine of collateral estoppel or estoppel by record is appropriate. The doctrine of estoppel by record prevents a party from litigating again what was actually litigated or what might have been litigated in a former action.").

These statements equating "estoppel by record" and issue preclusion (collateral estoppel) cannot be readily reconciled with the Wisconsin supreme court's pronouncements on estoppel by record that are discussed above. Of these, however, only the court of appeals' decision in *Portage County Bank v. Deist* is precedential. See Wis. Stat. §809.23(3)(a). And, again, this court's task in applying Wisconsin law is to predict how the Wisconsin supreme court would resolve the issue. *Daniels*, 74 F.4th at 806. For the reasons explained above, the best prediction is that the Wisconsin supreme court would, consistent with its precedents, apply estoppel by record only following entry of a final order, presuming that the court would not instead declare estoppel by record a dead doctrine, fully overtaken by modern claim-preclusion law. See Millar, 35 Ill. L. Rev. at 59. In all events, even if *Portage County Bank v. Deist* were correct in equating estoppel by record with issue preclusion, that does not aid the Lee Parties, because issue preclusion also requires a final order. See *Jensen*, 554 N.W.2d at 235.

purchased or maintained with fraudulently obtained funds", and, as a result, the debtors are not entitled to claim the homestead exemption under *Estate of Paulman v. Pemberton* because "a homestead exemption does not apply to properties maintained with stolen or embezzled property, or by the wrongful appropriation of property rightly belonging to others." ECF No. 29, at 6–7 (quotations omitted).

As explained above, the Ozaukee County circuit court entered judgment in default based on the debtors' failure to answer the Lee Parties' complaint against them and ten other defendants. "For purposes of claim preclusion", under Wisconsin law: "'The conclusiveness of a default judgment . . . "is limited to the material issuable facts which are well pleaded in the declaration or complaint. The judgment does not extend to issues which were not raised in the pleadings."'" *Menard, Inc. v. Liteway Lighting Prods.*, 698 N.W.2d 738, 747–48 (Wis. 2005) (quoting *A.B.C.G. Enters., Inc. v. First Bank, S.E., N.A.*, 515 N.W.2d 904, 910 (Wis. 1994)); see also *Nat'l Operating, L.P. v. Mut. Life Ins. Co. of N.Y.*, 630 N.W.2d 116, 131 (Wis. 2001) (The claim-preclusive effect of default judgments "is limited to that which is demanded in the plaintiff's complaint." (quoting *Klaus v. Vander Heyden*, 316 N.W.2d 664, 668 (Wis. 1982))). The Lee Parties' contention that the Ozaukee County default judgment bars the debtors' homestead exemption, either under Wis. Stat. §815.18(10) or based on the homestead-exemption limitation recognized in *Estate of Paulman*, is not supported by the well-pleaded facts and issues in the Ozaukee County complaint.

a

The Ozaukee County complaint pleads that the Lee Parties previously obtained money judgments against Yang for "various statutory violations, and a failure to pay restitution". ECF No. 30-1, at 8–10. The complaint generally asserts that Yang, to avoid the Lee Parties' collection efforts, transferred unspecified assets to the "defendants" (without differentiation) "for the purchase of real property" and that the transfers were

made either without receiving equivalent value or with the "intent to hinder, delay or defraud" the Lee Parties, alleging all this to be the Lee Parties' *beliefs*:

- The Lee Parties "have a good faith basis to believe that Ms. Yang transferred . . . cash or other assets belonging to the [Lee Parties] to Defendants for the purchase of real property, to avoid the collection of a judgment against Ms. Yang." *Id.* at 10.

- "Plaintiffs believe that these transfers were done without receiving equivalent value." *Id.*

- "Plaintiffs believe that these transfers were done with an intent to hinder, delay or defraud the Plaintiffs' efforts to collect a present or future judgment against Ms. Yang." *Id.*

- "Plaintiffs believe each of the above transfers to be a violation of Wisconsin Statutes Chapter 242." *Id.* at 11.

As for specific allegations about debtors Ger and Jia Xiong, the complaint states only:

- "Ger Xiong was the finance director for hedge funds operated by Kay Yang, and may be an insider under Wisconsin Statutes section 242.01(7). Jia Xiong is his spouse. Their personal residence is 353 Oak St., Oakfield, WI 53065." *Id.* at 8.

- "The specific transfers related to the purchase of the following properties with the help or assistance of the persons listed: . . . To Ger Xiong and Jia Xiong for the purchase of 353 Oak St., Oakfield, Wisconsin 53065." *Id.* at 10–11.

The complaint concludes by invoking the Uniform Fraudulent Transfer Act's remedy provision, Wis. Stat. §242.07, to request that the court avoid the transactions, enjoin further transfers of the alleged properties, and "for the issuance of a writ of attachment" against those properties. *Id.* at 11–12. The complaint does not allege (even a belief) that the debtors (or any of the other defendants)—rather than Yang unilaterally—acted with

an intent to defraud the Lee Parties or were aware that Yang's alleged transfers offended Wisconsin's Uniform Fraudulent Transfer Act.

The Ozaukee County circuit court's default judgment, as amended, makes the defendants, including the debtors, jointly and severally liable for more than $2.4 million, apparently the total amount of the Lee Parties' several judgments against Yang, plus the costs of the Ozaukee action. ECF No. 19-5. The amended judgment further states "that each of the following properties", including the debtors' property in Fond du Lac County, a property in Minnesota, and one in Michigan, "are attached by lien[s] in favor of the plaintiffs in the total amount of the judgment". *Id.* at 3–4.

i

The Ozaukee County circuit court's default judgment plainly does not limit as a matter of claim preclusion the debtors' exemptions under Wis. Stat. §815.18(10). That provision expressly authorizes "the court having jurisdiction"—here, this bankruptcy court—to exercise "discretion" to deny a debtor's exemptions, if "the debtor procured, concealed or transferred assets with the intention of defrauding creditors." *Id.* As against the debtors, the complaint contains no well-pleaded allegation that they procured their residence or otherwise acted with the *intention* of defrauding creditors (either theirs, the apparent relevant creditors for §815.18(10), or anyone else's, including Yang's). Instead, the complaint pleads no more than that the debtors received unspecified "transfers" from Yang "related to the purchase of" their residence. ECF No. 30-1, at 10–11.

The complaint, moreover, does not plead facts that plausibly show the debtors committed actual fraud to obtain funds used to acquire their residence. The complaint's allegations are exceedingly vague and conclusory, alleging, for example, that "Plaintiffs have *a good faith basis to believe* that Ms. Yang transferred . . . *cash or other assets* belonging to the Plaintiffs to Defendants for the purchase of real property, to avoid collection of a judgment against Ms. Yang." ECF No. 30-1, at 10 (emphasis added). Even aside from the

fact that the allegation is limited to plaintiffs' "good faith basis to believe", no alleged facts plausibly show that Yang possessed and transferred assets *belonging to the plaintiffs* to the debtors (or to any of the defendants); as best one can tell from the complaint, the Lee Parties sought to plead that before they could collect their judgments from Yang, she transferred *her* assets to the defendants to thwart those collection efforts. The allegations of Yang's wrongdoing are not well pleaded, and they flunk by a wide margin the heightened pleading standard required to survive a motion to dismiss for a claim to void a transfer made with the actual intent to hinder or defraud creditors. See *Miller Compressing Co. v. John E. Busby and George A. Dionisopoulos, as Tr. of SFM Marital Tr.*, No. 2023AP1379, 2025 WL 1012851, at *12 (Wis. Ct. App. Apr. 1, 2025) ("We conclude that claims under WIS. STAT. §242.04(1)(a) based on 'actual intent to . . . defraud any creditor of the debtor' are required to be pleaded with particularity under WIS. STAT. § 802.03(2)."). At most, those allegations suggest only that the Lee Parties obtained money judgments against Yang, and Yang, to hinder *her* creditors, transferred assets to the various defendants, including the debtors. Those allegations, even if well pleaded, do not establish by preclusion that the debtors procured, concealed or transferred assets to defraud creditors within the meaning of Wis. Stat. §815.18(10)'s limitation on the homestead exemption.

ii

As for the limitation on Wisconsin's statutory homestead exemption recognized in *Estate of Paulman*, that limitation is premised on the notion that when a debtor obtains a residence with converted funds, the homestead exemption does not shield it from execution by the very party whose funds the debtor converted. See *Paulman*, 633 N.W.2d at 716 & 720 (Defendant "purchased his [residence] with converted funds" based on his having "misrepresented and misused [his] apparent fiduciary authority to convert and distribute [plaintiff's] assets and monies to [his] own benefit."); see also *Warsco v. Oshkosh Sav. & Tr. Co.*, 208 N.W. 886, 889 (Wis. 1926) ("On the trial of the

action, both [defendant] and his wife unqualifiedly admitted that the sum of $2,000 received from the [plaintiff] trust company had been invested in the homestead."). As explained above, the Ozaukee County complaint makes no well-pleaded allegation that the *debtors* intentionally converted *any* funds, let alone pleading any facts that plausibly suggest that the *debtors* stole, embezzled, or converted the *Lee Parties'* funds and used those funds to purchase their residence. Therefore, *Estate of Paulman*'s limitation on the homestead exemption is not applicable here as a matter of claim preclusion.

iii

Beyond all of this, the Ozaukee County complaint does not request any *relief* related to the debtors' homestead exemption. Indeed, the homestead-exemption issue could not arise until the Lee Parties obtained a judgment to enforce against the debtors—that is, until the Ozaukee County circuit court entered its default judgment. Chapter 815, Wis. Stats., governs executions of judgment. It provides that "[a] judgment which requires the payment of money or delivery of property may be enforced in those respects by execution" and an "execution may issue at any time within 5 years after the rendition of the judgment." Wis. Stat. §§815.02 & 815.04. Wisconsin's homestead exemption provides that "[a]n exempt homestead" is "exempt from execution, from the lien of every judgment, and from liability for the debts of the owner to the amount of $75,000" with certain exceptions not relevant here, and it allows "[a]ny owner of an exempt homestead *against whom a judgment has been rendered and entered* in the judgment and lien docket, . . . , [to] proceed under s. 806.04 for declaratory relief if the homestead is less than $75,000 in value and the owner of the judgment shall fail, for 10 days after demand, to execute a recordable release of the homestead from the judgment owner's judgment lien." Wis. Stat. §815.20(1) & (2) (emphasis added). These chapter 815 provisions plainly contemplate that any adjudication of a homestead exemption's

applicability will occur *after* rendition of the judgment that is being executed against the debtor's homestead.

As discussed above, the claim-preclusive effect of a default judgment "is limited to that which is demanded in the plaintiff's complaint." *Nat'l Operating*, 630 N.W.2d at 131 (quoting *Klaus*, 316 N.W.2d at 668). The judgment's preclusive force, therefore, does not extend to the debtors' ability to claim the homestead exemption.

Consequently, the Ozaukee County circuit court default judgment does not bar the debtors' homestead exemption as a matter of claim preclusion.

b

The Lee Parties also suggest that the Ozaukee County circuit court's default judgment may bar the debtors' homestead exemption as a matter of issue preclusion. "In Wisconsin, to determine whether issue preclusion applies, a court must first assess whether 'the question of fact or law that is sought to be precluded [was] actually . . . litigated in a previous action and . . . necessary to the judgment.'" *In re Landis*, No. 23-25448, 2025 WL 971656, at *4 (Bankr. E.D. Wis. Mar. 31, 2025) (quoting *Mrozek v. Intra Fin. Corp.*, 699 N.W.2d 54, 61 (Wis. 2005)). This "actually litigated" requirement makes issue preclusion generally inapplicable to default judgments, because, when a court enters a default judgment following a failure to answer the complaint, no contested matters are adjudicated. See *Deminsky v. Arlington Plastics Mach.*, 657 N.W.2d 411, 428 (Wis. 2003) ("an issue is actually litigated when an issue is 'properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" (quoting Restatement (Second) of Judgments §27, cmt. d (1982))); see also *Schouten v. Jakubiak (In re Jakubiak)*, 591 B.R. 364, 373 (Bankr. E.D. Wis. 2018) ("Wisconsin generally treats issues resolved by default judgment as not having been actually litigated: 'In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, [the issue-preclusion rule] does not apply with respect to

any issue in a subsequent action.'" (quoting *Heggy v. Grutzner*, 456 N.W.2d 845, 849 (Wis. Ct. App. 1990))).

There are limited circumstances, however, under which Wisconsin law affords issue-preclusive effect to default judgments, principally when a party actively obstructs the court's ability to adjudicate the alleged claims or abstains from continuing the adjudication to its conclusion after initially participating. As *Heggy* observes, comment e to §27 of the Restatement (Second) of Judgments (1980) states, "'[E]ven if [an issue] was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate.'" 456 N.W.2d at 849; see also *Cuene v. Peterson (In re Peterson)*, 604 B.R. 751, 767–68 (Bankr. E.D. Wis. 2019), aff'd sub nom. *Peterson v. Cuene*, 623 B.R. 758 (E.D. Wis. 2021).

But the Lee Parties do not make a case for affording issue-preclusive effect to the Ozaukee County circuit court's default judgment. They do not suggest that the debtors purposely evaded service of process, like the plaintiff in *Heggy*, 456 N.W.2d at 849, or participated in the previous proceeding until declining to present evidence of damages at trial, like the debtor in *Peterson*, 604 B.R. at 768. Nor do the Lee Parties contend that the debtors did anything to obstruct their prosecution of the Ozaukee County claims to their conclusion—the debtors simply failed to answer. Contrast *Kelley v. Ahern*, 541 B.R. 860, 863 (W.D. Wis. 2015) (Giving default judgment issue-preclusive effect under Wisconsin law against party who "litigated the case for almost three years[ but] did not appear at the trial."). The mere failure to answer is the paradigmatic default judgment to which issue preclusion is inapplicable.

Additionally, a default judgment does not give rise to issue preclusion over matters that were not or could not have been litigated in the prior case. *Unisys Med. Plan v. Timm*, 98 F.3d 971, 973 (7th Cir. 1996) (applying Wisconsin law); see also *Heggy*, 456 N.W.2d at 849 (issue preclusion applies to facts that are "essential to the judgment" (quotation omitted)); *Sheth v. Premierbank*, No. 15-cv-315, 2016 WL 4523937, at *11 (W.D.

Wis. Aug. 22, 2016) ("[A] default judgment may be preclusive only with respect to those issues that were necessarily decided by the first court's judgment." (applying Wisconsin law and citing *Kelley*, 541 B.R. at 866, and *Heggy*, 456 N.W.2d at 849)). Again, the complaint contained no well-pleaded allegations that the debtors engaged in fraud or conversion, and its request for relief did not seek—and, for the reasons explained above, could not have sought—an adjudication of the debtors' right to the homestead exemption.[7]

Finally, the Lee Parties have not shown that the application of issue preclusion to bar the debtors' homestead exemption is "fundamentally fair," absent which issue preclusion is inapplicable. In *In re Estate of Rille ex rel. Rille*, the Wisconsin supreme court listed the following "five factors in determining whether the application of issue preclusion satisfies notions of fundamental fairness":

> 1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;
>
> 2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;
>
> 3) Do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue;
>
> 4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and
>
> 5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and

---

7. The Lee Parties rhetorically contend, "If the Debtors wanted to assert that a fraudulent transfer claim was not adequately pled, that issue could have actually been litigated in Ozaukee County." ECF No. 29, at 6. Perhaps, but the fact that the debtors did not contest the adequacy of the complaint before entry of a default judgment does not enlarge the preclusive effect of that default judgment beyond the complaint's *well-pleaded* allegations and requests for relief. Wisconsin law is clear on that. *Menard*, 698 N.W.2d at 747–48.

fair adjudication in the initial action?

728 N.W.2d 693, 707 (Wis. 2007) (first citing *Michelle T. by Sumpter v. Crozier*, 495 N.W.2d 327, 330–31 & n.10 (Wis. 1993), and then citing *Precision Erecting, Inc. v. M & I Marshall & Ilsley Bank*, 592 N.W.2d 5, 12–13 (Wis. Ct. App. 1998)). "No weight is assigned to any factor; the weighting is in the discretion of the trial court." *DeGuelle v. Camilli*, 724 F.3d 933, 937 (7th Cir. 2013) (first citing *Estate of Rille*, 728 N.W.2d at 707; and then citing *United States v. Rosales*, 716 F.3d 996, 997 (7th Cir. 2013)).[8]

The Lee Parties contend that the fairness elements weigh in their favor, stating,

---

8.   As *In re Landis* explains,

> *DeGuelle* observes several conceptual difficulties with the "five-factor 'test'" adopted by *Estate of Rille*:
>
>> The first factor gestures, a little mysteriously, to the requirement that the loser have been able to appeal the adverse ruling sought to be used against him; the requirement is diluted in the Wisconsin supreme court's formulation by the trial judge's having discretion as to how heavily to weight it. Factor 2 we do not understand at all. Factors 3 and 4 are aspects of the requirement that the loser have had an opportunity for an adequate hearing in the first proceeding. Factor 5, while also related to the adequacy of that hearing, opens a Pandora's Box by invoking public policy, individual circumstances, and fundamental fairness. So the five-factor test is really eight factors. Would we could stop with eight! We can't; for after listing the eight factors the opinion states that "these enumerated factors are illustrative; they are not exclusive or dispositive. . . . The final decision whether the doctrine of issue preclusion [collateral estoppel] should be applied rests on the [trial] court's sense of justice and equity." The "test" thus is formless. (And what by the way is the difference between "justice" and "equity"?)
>>
>> Later in the opinion we learn that in applying factor 5 the trial court must "'balance competing goals of judicial efficiency and finality, protection against repetitious or harassing litigation, and the right to litigate one's claims.'" That brings the number of factors to 11, though in a later case we learn that "the overarching task" in applying the doctrine of collateral estoppel is "to make a holistic, discretionary determination regarding fundamental fairness." Holistic analysis is the opposite of dissecting an issue into parts.
>
> [*DeGuelle v. Camilli*,] 724 F.3d at 937–38 (citations omitted) (omission from quotation in original) (first quoting *Estate of Rille*, 728 N.W.2d at 707; then quoting *Estate of Rille*, 728

as to the first element, the Debtors had an opportunity to address this issue in the Ozaukee County Case (and their subsequent appeal of that judgment). Had the Debtors not immediately filed this bankruptcy, they also could have had a review of the Fond du Lac Court's decision. Elements two through four do not apply. As for the fifth element, it is certainly not good policy to allow a Debtor to avoid the consequences of years of litigation by simply filing an electronic bankruptcy petition in order to avoid a court ruling given minutes before which rejected the Debtors' position and ruled against them.

ECF No. 29, at 7–8.

The Lee Parties do not explain what "issue" they contend the debtors had an opportunity to address in Ozaukee County. At most one might conclude that the debtors had "an opportunity to address" the well-pleaded claims against them in the Ozaukee County complaint. But, as explained above, those issues do not include actual fraud, embezzlement, or knowing conversion of the Lee Parties' property. And, whatever issues might be found in the Ozaukee County complaint, they do not include the debtors' ability to utilize the homestead exemption (in whole or in part) in response to the Lee Parties' efforts to execute on the debtors' property to satisfy the default judgment entered by the Ozaukee County circuit court after the debtors failed to answer that very same complaint.

Moreover, under the circumstances here, even if the Ozaukee County default judgment can be viewed as adjudicating issues applicable to the contested matter of the debtors' use of the Wisconsin homestead exemption, significant differences in the

---

N.W.2d at 712; and then quoting *Aldrich v. Lab. & Indus. Rev. Comm'n*, 814 N.W.2d 433, 458 (2012)). Still, this court's duty is to apply Wisconsin's issue-preclusion law as best it can, so it considers *Estate of Rille*'s five non-exclusive factors, as well as other relevant considerations, guided by its sense of justice and equity, to determine whether applying issue preclusion . . . would be fundamentally fair. See *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 369 (1996) ("Absent a partial repeal of the Full Faith and Credit Act, 28 U.S.C. § 1738, by another federal statute, a federal court must give the judgment the same effect that it would have in the courts of the State in which it was rendered.").

*Landis*, 2025 WL 971656, at *4 n.7.

quality and extensiveness of the Ozaukee County proceedings and this one warrant litigating the homestead exemption issue here. The Ozaukee County complaint alleges no facts—certainly not specific ones—plausibly showing that the debtors actually defrauded the Lee Parties or converted their funds and then used those funds to acquire a residence. The complaint thus failed to put the debtors on notice that by not participating in that litigation, they risked forfeiting the homestead exemption's application as against the enforcement of any resulting judgment. Under the circumstances—taking account of both the discrete factors enumerated in the case law and considered holistically, guided by notions of justice and equity in affording appropriate weight—applying issue preclusion based on the Ozaukee County default judgment to bar the debtors' Wisconsin homestead exemption would not satisfy notions of fundamental fairness.

As for the Fond du Lac County ruling to which the Lee Parties refer, as explained above, it is not entitled to issue-preclusive effect because it was not final. And, in all events, that court ultimately left open whether the homestead exemption might apply other than to any amount the Lee Parties show that the debtors converted and then invested into their residence.

## III

One last thing. On December 9, 2024, the debtors filed an "objection to the [Lee Parties'] objection to exemption and motion for costs". ECF No. 24 (capitalization altered). The debtors request that the court award them fees and costs against the Lee Parties "for having filed a frivolous objection." *Id.* at 2. The debtors didn't support this contention with any developed argument. And they have not shown that the Lee Parties' positions were frivolous. Moreover, the debtors failed to comply with Rule

9011(c), which alone is sufficient grounds to deny their request for an award of fees and costs.

IV

For these reasons, it is hereby ordered and declared as follows:

1. The debtors' Wisconsin homestead exemption is not precluded as a matter of law by the orders, rulings, judgments, or records in the Ozaukee County or Fond du Lac County circuit courts;

2. To the extent that the Lee Parties seek to prove in this bankruptcy case that the debtors' Wisconsin homestead objection is inapplicable, either in whole or in part, that litigation will proceed in tandem with *Lee v. Xiong*, Adv. Proc. No. 24-02180, in which the Lee Parties allege that the Ozaukee County circuit court's default judgment is not dischargeable, including that all discovery and any trial will be conducted to resolve both this contested matter and the adversary proceeding; pretrial orders in the adversary proceeding govern adjudication of the contested matter.

3. The debtors' motion for an award of fees and costs is denied.

# # # # #